UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ADMINISTRATOR OF THE U.S. SMALL
BUSINESS ADMINISTRATION, an Agency
of the Government of the United States of
America,

                          Plaintiff,

                - against -

ANDREA CONTESSA, GERARD
CONTESSA, CBL MOTOR CAR CORP.,
DESIGN PLUMBING & HEATING
SERVICES, NEW YORK STATE
DEPARTMENT OF TAXATION AND
FINANCE, NEW YORK CITY
DEPARTMENT OF FINANCE PARKING
VIOLATIONS BUREAU, BOARD OF
DIRECTORS OF THE PRINCESS
ESTATES II HOMEOWNERS
ASSOCIATION, JOHN DOE 1–5, and
JANE DOE 1–5,

                     Defendants.
------------------------------------------------------------x

**MEMORANDUM & ORDER**
19-CV-6127 (PKC) (ST)

PAMELA K. CHEN, United States District Judge:

On October 30, 2019, the Administrator of the United States Small Business Administration ("Plaintiff" or the "SBA") commenced this action under Article 13 of the New York Real Property Actions and Proceedings Law ("RPAPL"), seeking to foreclose on a mortgage encumbering the property located at 18 Sylvan Court, Staten Island, NY 10307 ("the Property"). (Compl., Dkt. 1, ¶¶ 8, 15, 16.)  The lawsuit was brought against CBL Motor Car Corp., Andrea Contessa and Gerard Contessa (collectively, "Contessa Defendants"); Wells Fargo Bank, N.A. s/b/m Wells Fargo Home Mortgage Inc. ("Wells Fargo"), as a subordinate mortgagee; and several

1

other entities that the SBA alleged were possible subordinate lienors ("Subordinate Lienor Defendants"). (*See generally* Compl., Dkt. 1.)[1]

Currently before this Court is Plaintiff's Motion for Summary Judgment that seeks the following: (1) an order granting summary judgment in the SBA's favor pursuant to Fed. R. Civ. P. 56(a) and striking the Contessa Defendants' answer, affirmative defenses, counterclaims, and counter-statement of material facts; (2) a judgment of foreclosure and sale as to the Property; (3) an order of default judgment as to the Subordinate Lienor Defendants; and (4) leave to amend the pleadings to dismiss the "John Does" and "Jane Does" from this case. (*See* Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment ("Pl. Mem."), Dkt. 80, ¶¶ 2, 140, 144.)

For the reasons explained below, the Court finds that Plaintiff has met its burden of proof to establish a *prima facie* case for foreclosure, while Defendants have failed to adduce evidence to rebut that *prima facie* case. Accordingly, Plaintiff's motion for summary judgment is granted, and Plaintiff's motion to strike the Contessa Defendants' answer and affirmative defenses, and its motion for leave to amend the pleadings, are denied as moot.[2]

---

[1] The Subordinate Lienor Defendants include Design Plumbing and Heating Services, New York State Department of Taxation and Finance, New York City Department of Finance Parking Violations Bureau, and the Board of Directors of the Princess Estates II Homeowners Association, Inc. (Compl., Dkt. 1, ¶¶ 28–31.) Plaintiff also added as defendants "John Doe #1-5" and "Jane Doe #1-5," with the intent to designate tenants, occupants, or other persons who could claim any estate or interest in possession upon the Property. (*Id.* ¶ 32.)

[2] To the extent Plaintiff seeks default judgment against the Subordinate Lienor Defendants, it must make a separate motion for default judgment in accordance with Local Rules of this District and Rule 55 of the Federal Rules of Civil Procedure.

# BACKGROUND

## A.      Relevant Facts[3]

Since 1994, Gerard and Andrea Contessa have primarily resided at the Property.  (Contessa

Defendants' Rule 56.1 Counterstatement of Facts ("Defs. Rule 56.1"), Dkt. 81-2, ¶¶ 1, 10;

Plaintiff's Rule 56.1 Statement of Facts ("Pl. Rule 56.1"), Dkt. 78, ¶ 6.)  In September 2001, Gerard

Contessa ran a retail automobile sales company, operating under the name of CBL Motor Car

Corp. ("CBL Motor").  (Defs. Rule 56.1, Dkt. 81-2, ¶ 3.)  In the months after the 9/11 attacks, the

Small Business Administration offered "Disaster Area" loans to small businesses in the area where

Gerard Contessa lived and where CBL Motor was located.  (*Id.* ¶¶ 6–8.)

On or around April 20, 2002, CBL Motor executed a Promissory Note ("Note") for a

"Disaster Area" loan from Plaintiff for $426,000 at an annual interest rate of 4%.  (Pl. Rule 56.1,

Dkt. 78, ¶ 1.)  As security for the Note, the Contessa Defendants executed a mortgage (the

"Mortgage") on the Property.  (*Id.* ¶ 2.)  In addition, Gerard and Andrea Contessa each signed

personal, unconditional guarantees for repayment "to SBA of all amounts owing under the Note."

---

[3] Unless otherwise noted, a standalone citation to Plaintiff's 56.1 Statement of Facts or the Contessa Defendants' 56.1 Counterstatement of Facts, denotes that this Court has deemed the underlying factual allegation undisputed and incorporates by reference the documents cited therein.  Where relevant, however, the Court may cite directly to the underlying document. Furthermore, the Court has deemed facts averred in a party's 56.1 statement or factual submission to which the opposing party cites no admissible evidence in rebuttal as undisputed.  *See Lumbermens Mut. Cas. Co. v. Dinow*, No. 06-CV-3881 (TCP), 2012 WL 4498827, at *2 n.2 (E.D.N.Y. Sept. 12, 2012) ("Eastern District Local Rule 56.1 requires . . . that disputed facts be *specifically* controverted by admissible evidence.  Mere denial of an opposing party's statement or denial by general reference to an exhibit or affidavit does not specifically controvert anything." (emphasis in original)).  Additionally, to the extent a party's 56.1 statement or factual submission "improperly interjects arguments and/or immaterial facts in response to facts asserted by [the opposing party], without specifically controverting those facts[,]" the Court has disregarded the statement.  *Risco v. McHugh*, 868 F. Supp. 2d 75, 87 n.2 (S.D.N.Y. 2012).

(*See* Gerard Contessa Guaranty, Ex. C, Dkt. 80-5, ¶ 2; Andrea Contessa Guaranty, Ex. D, Dkt. 80-6, ¶ 2; Pl. Rule 56.1, Dkt. 78, ¶ 3.)

CBL Motor and Gerard Contessa defaulted on the Note by failing to make a payment on or about June 28, 2008. (Pl. Rule 56.1, Dkt. 78, ¶ 4.) Sometime in October 2008, Gerard Contessa attempted to negotiate with Plaintiff over his defaulted loan. (Pl. Response to Defs. Rule 56.1, Dkt. 82-1, ¶ 20.) As of February 16, 2022, the principal balance due on the Note is $402,508.10. (Pl. Rule 56.1, Dkt. 78, ¶ 5; *see also* Affidavit of Jeffrey H. Schervone, Ex. D, Dkt. 81-1, ¶ 15.)

### B.    Procedural History

On October 30, 2019, Plaintiff initiated this action to foreclose on the Property. (Compl., Dkt. 1.) Plaintiff filed a letter on January 30, 2020, notifying the Court that it was in negotiations with Andrea and Gerard Contessa to resolve the litigation. (Dkt. 26.) On March 17, 2020, Plaintiff requested certificates of default as to Andrea and Gerard Contessa, and thereafter reported that it was "unable to reach an amicable resolution" with these Defendants. (Dkts. 27, 28, 29.) Following a months-long adjournment of the deadline for Plaintiff to move for default judgment as to the Contessa Defendants due to the Covid-19 pandemic (*see* 5/21/2020 Order), Plaintiff and the Contessa Defendants engaged in a series of settlement negotiations before the Magistrate Judge, the Honorable Steven L. Tiscione (*see, e.g.*, 10/28/2020 Minute Entry for Settlement Conference; 5/3/2021 Minute Entry for Settlement Conference; 8/16/2021 Minute Entry for Settlement Conference; 11/23/2021 Minute Entry for Settlement Conference). While settlement discussions were ongoing, Plaintiff and the Contessa Defendants completed discovery. (*See* Dkt. 56.)

On March 1, 2022, Plaintiff moved for summary judgment against CBL Motor, the Contessa Defendants, Wells Fargo, and the Subordinate Lienor Defendants, with briefing completed on May 20, 2022. (*See* Plaintiff's Motion for Summary Judgment, Dkt. 77; *see also*

Contessa Defendants' Opposition ("Contessa Opp.") Dkt. 81-3; Plaintiff's Reply Brief in Support of Summary Judgment ("Pl. Rep."), Dkt. 82.)[4]

On October 31, 2022, the Court dismissed Wells Fargo from this case following a stipulation of dismissal filed by Plaintiff as to that Defendant.  (*See* Dkt. 87; *see also* 10/31/2022 Order.)  To date, none of the Subordinate Lienor Defendants have entered an appearance in this case or filed an answer to the Complaint, leaving only the Contessa Defendants to respond to Plaintiff's summary judgment motion.

## LEGAL STANDARD

Summary judgment is appropriate where the submissions of the parties, taken together, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 251–52 (1986) (The summary judgment inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.").  A factual dispute is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.

"The moving party bears the burden to demonstrate the absence of any genuine issues of material fact[.]"  *New York v. Mountain Tobacco Co.*, 942 F.3d 536, 541 (2d Cir. 2019) (citations and quotation marks omitted).  "Once this burden is met, the burden shifts to the nonmoving party to proffer some evidence establishing the existence of a question of material fact that must be resolved at trial."  *See Dorsey v. Gannon*, No. 20-CV-1525 (PKC) (PK), 2022 WL 4660555, at *2 (E.D.N.Y. Sept. 30, 2022) (citation omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–

---

[4] Although the Contessa Defendants had anticipated filing their own motion for summary judgment, they later decided against doing so. (*See* Dkt. 74 (Contessa Defendants' letter indicating that they "have decided against making a summary judgment motion").)

23 (1986).  A mere "scintilla of evidence" in support of the non-moving party is insufficient; rather, "there must be evidence on which the jury could reasonably find for the non-movant."  *Hayut v. State Univ. of New York*, 352 F.3d 733, 743 (2d Cir. 2003) (cleaned up).  In other words, "[t]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial."  *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (cleaned up).

"An affirmative defense can be dismissed on summary judgment when that defense is unsupported by any evidence in the record."  *Eastern Sav. Bank, FSB v. Johnson*, No. 13-CV-6070 (AMD) (SLT), 2022 WL 877781, at *4 (E.D.N.Y. Jan. 31, 2022) (quoting *Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co., LLC*, No. 15-CV-8459 (LGS), 2018 WL 3364388, at *1 (S.D.N.Y. July 9, 2018) (internal quotation marks and citation omitted)).  When "a plaintiff uses a summary judgment motion, in part, to challenge the legal sufficiency of an affirmative defense . . . a plaintiff may satisfy its Rule 56 burden by showing that there is an absence of evidence to support [an essential element] of the [non-moving party's] case."  *Id.* (quoting *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (alterations in original)).  "Conversely, if an affirmative defense is supported by evidence from which a reasonable jury could find the defense applicable, then summary judgment must be denied."  *Lifeguard Licensing Corp.*, 2018 WL 3364388, at *1 (citing *Celotex*, 477 U.S. at 323).

When determining whether a genuine issue of fact exists, the Court "must resolve all ambiguities and draw all justifiable factual inferences in favor of the party against whom summary judgment is sought."  *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008) (citing *Anderson*, 477 U.S. at 255); *see also Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986) ("[T]he court's responsibility [at the summary judgment stage] is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving

ambiguities and drawing reasonable inferences against the moving party.") (citation omitted).

"Summary judgment is appropriate when, after drawing all reasonable inferences in favor of the

party against whom summary judgment is sought, no reasonable trier of fact could find in favor of

the non-moving party." *Horn & Hardart Co. v. Pillsbury Co.*, 888 F.2d 8, 10 (2d Cir. 1989)

(citation omitted).  "[T]he mere existence of some alleged factual dispute between the parties will

not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S.

at 247–48 (emphasis omitted); *see also BellSouth Telecomms., Inc. v. W.R. Grace & Co-Conn.*, 77

F.3d 603, 615 (2d Cir. 1996) (holding that to successfully oppose summary judgment, "[i]t is not

sufficient merely to assert a conclusion without supplying supporting arguments or facts")

(citations omitted).

## DISCUSSION

## I.     Foreclosure Claims Under New York Law

"Under New York state law, three elements must be established in order to sustain a

foreclosure claim: (1) the proof of the existence of an obligation secured by a mortgage; (2) a

default on that obligation by the debtor; and (3) notice to the debtor of that default." *Gustavia*

*Home LLC v. Hoyer*, 362 F. Supp. 3d 71, 79 (E.D.N.Y. 2019) (quoting *United States v. Paugh*,

332 F. Supp. 2d 679, 680 (S.D.N.Y. 2004)); *see also CIT Bank, N.A., v. Portfolio Recovery Assocs.*,

*LLC*, No. 15-CV-8618 (KMK), 2017 WL 2819867, at *3 (E.D.N.Y. June 28, 2017) ("A plaintiff

mortgagee in a foreclosure action establishes a *prima facie* case by presenting a note, a mortgage,

and proof of default.") (citations and quotation marks omitted).  The parties do not contest that

Plaintiff has established the first two elements.  (*See* Contessa Opp., Dkt. 81-3, ¶ 16 (Contessa

"Defendants admit the underlying loan was made by Plaintiff, execution of the Note [and] of [the]

Mortgage, and their default.").)  Therefore, Plaintiff's *prima facie* case rests entirely on whether it provided proper notice of default.[5]

### A.    Notice Requirement Under RPAPL

Section 1304 of RPAPL provides, in relevant part, that "at least ninety days before a lender, an assignee, or a mortgage loan servicer commences legal action against the borrower, including mortgage foreclosure, [that entity] shall give notice to the borrower" of the debt owed and the amounts due to cure the default.  RPAPL § 1304(1).  "RPAPL 1304 does not indicate what proof a lender must submit in a foreclosure action to demonstrate compliance with the notice requirement."  *CIT Bank N.A. v. Schiffman*, 168 N.E.3d 1138, 1142 (N.Y. 2021).  However, New York courts have recognized two ways for a party seeking foreclosure to demonstrate compliance with the notice requirements of RPAPL Section 1304.

First, a plaintiff may demonstrate compliance with Section 1304 by providing a sworn statement that the notice was "mailed by a particular person, or that a particular process, which resulted in mailing, was uniformly and diligently followed."  *OneWest Bank, N.A. v. Guerrero*,

---

[5] Some courts have held that the *prima facie* case can be established with just proof of the "note, mortgage, and proof of default," and consider the failure to provide "notice of default" to be an affirmative defense to be raised by the mortgagor opposing foreclosure.  *See Portfolio Recovery Assocs.*, *LLC*, 2017 WL 2819867, at *3–4.  However, in light of the Second Circuit's recent statement that "[p]roper service of [an] RPAPL 1304 notice on the borrower . . . is a condition precedent to the commencement of a foreclosure action, and the plaintiff has the burden of establishing satisfaction of that condition," *see CIT Bank N.A. v. Schiffman*, 999 F.3d 113, 116 (2d Cir. 2021), this Court finds that the "notice of default" is more appropriately understood as one of the elements of the *prima facie* case.  *See Freedom Mortg. Corp.*, No. 19-CV-410 (RJD) (SJB), 2022 WL 4274936, at *7 (E.D.N.Y. Sept. 15, 2022) ("As an initial matter, it is not at all clear that section 1304 compliance is an 'affirmative defense,' as opposed to an element of a foreclosure claim that must be pled."); *see also Wells Fargo Bank, N.A. v. Watts*, No. 16-CV-6919 (ENV) (RER), 2020 WL 6370057, at *1 n.2 (E.D.N.Y. May 27, 2020) ("Regardless of whether such proof [of notice under RPAPL Section1304] is a *prima facie* element, here Defendant has asserted this affirmative defense and it is Plaintiff's obligation on summary judgment to establish the sufficiency of the § 1304 notice."), *report and recommendation adopted*, 2020 WL 5200903 (E.D.N.Y. Sept. 1, 2020).

No. 14-CV-3754 (NSR), 2018 WL 2727891, at *7 (S.D.N.Y. June 6, 2018) (internal quotation marks and citation omitted).  This method of satisfying the notice requirements of RPAPL is premised on the "longstanding doctrine of [']presumption of regularity[']; that is, 'a letter or notice that is mailed is presumed to be received by the addressee.'"  *CIT Bank, N.A. v. Valerio*, No. 16-CV-6644 (DRH) (SIL), 2018 WL 4268913, at *5 (E.D.N.Y. Aug. 15, 2018) (citations omitted), *report and recommendation adopted*, 2018 WL 4265869 (E.D.N.Y. Sept. 5, 2018).

Second, and alternatively, "a foreclosure plaintiff could . . . establish compliance with Section 1304 through 'proof of the actual mailings, such as affidavits of mailing or domestic return receipts with attendant signatures.'"  *See CIT Bank N.A. v. Schiffman*, 999 F.3d 113, 116 n.3 (2d Cir. 2021) (quoting *Citibank, N.A. v. Conti-Scheurer*, 98 N.Y.S.3d 273, 276–77 (N.Y. App. Div. 2019)).  Therefore, "[i]n lieu of such an affidavit, courts have accepted as sufficient evidence of mailing 'uncontroverted United States Postal Service records.'"  *United States v. Starr*, No. 16-CV-1431 (NSR), 2017 WL 4402573, at *4 (S.D.N.Y. Sept. 29, 2017) (quoting *CIT Bank, N.A. v. O'Sullivan*, No. 14-CV-5966 (ADS) (AYS), 2016 WL 2732185, at *5 (E.D.N.Y. May 10, 2016)).

## B.      The Contessa Defendants Received Adequate Notice Under RPAPL § 1304

The Contessa Defendants argue that Plaintiff SBA failed to state, "who supposedly sent" the acceleration letter or the notice of default "or when they were sent." (Contessa Opp., Dkt. 81-3, ¶ 17.)  They further argue that the SBA cannot benefit from a "presumption of regularity" because the SBA has "offered no evidence as to its standard office practices for mailing" and the SBA has not submitted an affidavit that states the affiant "actually mailed" the RPAPL Section 1304 notice.  (*Id.* ¶ 21 (citations omitted)).

The Contessa Defendants are correct that the SBA has not submitted any sworn affidavits explaining the standard office procedure "used to create, mail and store data regarding the 90-day

pre-foreclosure notice," submitted by an affiant who is personally familiar with this procedure. *See Schiffman*, 999 F.3d at 116. Plaintiff's counsel explains—in the reply brief, not an affidavit— that "the SBA . . . cannot provide an affidavit of mailing" because he (Plaintiff's counsel) was the one who mailed the RPAPL Section 1304 foreclosure notices to the Contessa Defendants. (Pl. Rep., Dkt. 82, ¶ 82.) He further explains that he is a solo-practitioner, and that he "personally draft[s] and review[s] the RPAPL 90-day foreclosures notices for the SBA to execute" and "personally handle[s] mailing said 1304 letters prior to commencing any foreclosure lawsuit." (*Id.* ¶¶ 83–85.) However, the case law is clear that compliance with RPAPL Section 1304 through proof of "standard office procedures" requires "a sworn statement" to attest to these facts. *Guerrero*, 2018 WL 2727891, at *7. Even if Plaintiff's counsel handled these procedures himself, New York courts have not recognized a solo-practitioner exception to this requirement.[6]

Nonetheless, as discussed above, "[i]n lieu of such an affidavit, courts have accepted as sufficient evidence of mailing uncontroverted United States Postal Service records." *See Starr*, 2017 WL 4402573, at *4 (citation and internal quotation marks omitted). For example, courts have accepted "certified mailing receipts or certificates of first-class mailing" as proof of mailing. *See Wilmington Sav. Fund Soc'y, FSB v. White*, No. 17-CV-2288 (RRM) (SIL), 2019 WL 4014842, at *4 (E.D.N.Y. May 28, 2019). To satisfy the service provision of RPAPL Section 1304, the copies of certified mail receipts submitted by the party moving for foreclosure must contain some "marking evidencing an actual mailing by the United States Postal Service[.]" *See Freedom Mortg. Corp. v. Monteleone*, No. 19-CV-410 (RJD) (SJB), 2022 WL 4274936, at *6

---

[6] Although the Court appreciates that Plaintiff's counsel is a solo practitioner, he could have avoided any doubt about proof of adequate notice by having the SBA send out the notices itself. Had the SBA done so, it could have submitted a sworn affidavit from an SBA employee with actual knowledge that these notices were mailed.

(E.D.N.Y. Sept. 15, 2022) (citing cases); *cf. V.A. v. City of New York*, No. 20-CV-989 (EK) (RML), 2022 WL 1469394, at *10 (E.D.N.Y. May 10, 2022) (a "certified mail receipt bear[ing] a postmark date" is insufficient as proof of mailing if "there was no evidence that the [document] was mailed under that certified receipt number") (quoting *Bank of Am. v. Guillaume*, 94 N.Y.S.3d 114, 115–16 (N.Y. App. Div. 2019)).  Thus, courts have found that evidence in the form of copies of mailing labels, *see Wilmington Sav.*, 2019 WL 4014842, at *5, or copies of letters and envelopes with 20-digit United States Postal Services ("USPS") tracking numbers—but lacking any "marking evidencing actual mailing," *Freedom Mortg. Corp.*, 2022 WL 4274936, at *6 —are "insufficient to eliminate all triable issues of fact as to whether the certified mailing actually occurred," *see Deutsche Bank Nat'l Tr. Co. v. Feeney*, 137 N.Y.S.3d 405, 407 (N.Y. App. Div. 2020).

The Court finds that Plaintiff has satisfied the notice requirement of RPAPL Section 1304 by providing proof of certified mailing receipts.  Plaintiff affixed to its Complaint and its motion for summary judgment copies of identical letters to Gerard Contessa and Andrea Contessa, each dated July 8, 2009, informing each that their "mortgage loan is in default as of June 28, 2008." (Pl. Mem., Ex. F, Dkt. 80-8, at ECF[7] 2–3, 4–5.)  In addition, Plaintiff submitted two certified mail receipts addressed to Andrea and Gerard Contessa, dated July 9, 2009, which Plaintiff submits are the certified mailing receipts for the July 8th notices of foreclosure.  (*Id.* at ECF 6; *see also* Pl. Rep., Dkt. 82, ¶¶ 76–77.)  Upon examination of these receipts, the Court finds that these certified mail receipts contain postmark seals and stamps reading "OFFICIAL USE"—which are exactly the type of "marking[s] evidencing an actual mailing" by USPS.  *Freedom Mortg. Corp.*, 2022 WL 4274936, at *6.  Because these official markings are "uncontroverted USPS records," *see id.*,

---

[7] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

the Court finds that there are no triable issues of fact as to whether the certified mailing actually occurred.

Accordingly, Plaintiff has established a *prima facie* case for summary judgment in favor of foreclosure.

## II.   Defendants' Affirmative Defenses Fail to Create a Triable Issue of Fact

The Court now turns to Defendants' affirmative defenses.  "Once the mortgagee's *prima facie* case is established, the mortgagor must make an affirmative showing that a defense to the action existed." *Builder Banks v. Charm Devs. II, LLC*, Nos. 09-CV-3395, 09-CV-4410 (JG) (LB), 2010 WL 3463142, at *3 (E.D.N.Y. Aug. 30, 2010).  Generally, defendants bear the burden to establish their affirmative defenses. *See U.S. Bank Nat'l Ass'n v. McDermott*, No. 20-CV-352 (KMK), 2022 WL 2392522, at *5 (S.D.N.Y. July 1, 2022) (citations omitted).[8]

The Contessa Defendants' Answer raises 16 affirmative defenses.  (Am. Answer, Dkt. 50, at 10–12.)  Over the course of summary judgment briefing, the Contessa Defendants voluntarily withdrew the second, fourth, and eleventh affirmative defenses.  (Contessa Opp., Dkt. 81-3, ¶ 32.)  Therefore, the Court addresses only the remaining 13 affirmative defenses.  As explained below, all of the remaining affirmative defenses are without merit.

### A.   First Affirmative Defense: Failure to State a Claim

The Contessa Defendants' first affirmative defense is that "Plaintiff fails in each and every cause of action to state a claim upon which relief can be granted against the Defendants."  (Am.

---

[8] For certain affirmative defenses, such as Plaintiff's lack of standing to initiate the lawsuit, Plaintiff bears the burden. *See Avail Holding, LLC v. Nanda*, No. 15-CV-486 (ADS) (SIL), 2017 WL 9485717, at *4 (E.D.N.Y. Jan. 11, 2017) ("Where standing is raised as a defense by a defendant, the plaintiff is required to prove its standing before it may be determined whether the plaintiff is entitled to relief.") (citations and brackets omitted), *report and recommendation adopted*, 2017 WL 543206 (E.D.N.Y. Feb. 10, 2017).

Answer, Dkt. 50, at 10.)  Specifically, they claim that Plaintiff has "not satisfactory [sic] prove[n] that the conditions precedent are satisfied," and argue that Plaintiff has provided "no details as to the service of the default and RPAPL 1304 notices."  (Contessa Opp., Dkt. 81-3, ¶ 34.)  Because the Court has determined that Plaintiff has established its *prima facie* case for summary judgment, this defense must fail.  *See Hoyer*, 362 F. Supp. 3d at 81 (rejecting failure-to-state-a-claim defense where Plaintiff "ha[d] established its *prima facie* case").

### B. Third Affirmative Defense: Failure to Comply with Contractual Conditions Precedent

The Contessa Defendants' third affirmative defense is that "Plaintiff has not complied with all applicable notices and/or acceleration requirements in the alleged note and mortgage[,]" and therefore has "failed to properly accelerate the note and mortgage."  (Am. Answer, Dkt. 50, at 10.) In support of this defense, the Contessa Defendants offer no evidence and argue only that the "SBA claims it served a default notice in 2008 but has provided no details as to who served it and no affidavit of service."  (Contessa Opp., Dkt. 81-3, ¶ 36.)  Because the Contessa Defendants have failed to point out any particular "contractual condition" in the Note or Mortgage that Plaintiff allegedly violated (*see id.*; Am. Answer, Dkt. 50, at 10), they have failed to meet their burden to prove this affirmative defense.  In fact, the Note explicitly states that in the event of CBL Motor and Gerard Contessa's default, Plaintiff can "[w]ithout notice or demand or without giving up any of its rights . . . [r]equire immediate payments of all amounts owing under this Note."  (*See* Note, Ex. A, Dkt. 80-3, at 1, ¶ 5(A).)  Accordingly, the Court rejects this defense.

### C. Fifth Affirmative Defense: Contributory Negligence

For their fifth affirmative defense, the Contessa Defendants assert that "[t]he damages, if any, that were allegedly sustained by Plaintiff as a result of the facts contained in the complaint were caused in whole or in part, or were contributed to by reasons of the acts, omissions,

13

negligence and/or intentional misconduct of Plaintiff."  (Am. Answer, Dkt. 50, at 10.)  The Contessa Defendants claim "[u]pon information and belief [that] no other lender would have lent money to Gerard Contessa or CBL [Motor], based upon their grave financial circumstances and their inability to pay back the loan."  (*Id.* ¶ 51 (cited in Contessa Opp., Dkt. 81-3, ¶ 40).)  The Contessa Defendants also argue that Plaintiff has not presented evidence to support or rebut this defense.  (Contessa Opp., Dkt. 81-3, ¶ 37.)

As the Court has already explained, the party asserting the affirmative defense bears the burden of proving it.  Here, the Contessa Defendants point only to their Amended Answer, and not to any undisputed facts that were proven by evidence, as they must at the summary judgment stage. *See Fitzgerald v. Henderson*, 251 F.3d 345, 360–61 (2d Cir. 2001) ("In general, a party opposing a properly supported motion for summary judgment is not entitled to rely solely on the allegations of [their] pleading, but must show that there is admissible evidence sufficient to support a finding in [their] favor on the issue that is the basis for the motion.") (citation omitted).  The Contessa Defendants cannot assert this affirmative defense based solely on the allegation in their Amended Answer that only the SBA was willing to extend a loan to CBL Motor and Gerard Contessa, because this "factual allegation" is based on an "information and belief" pleading, which violates Rule 56's requirement that affidavits be made on personal knowledge.  *See Patterson v. Cnty. of Oneida, New York*, 375 F.3d 206, 219 (2d Cir. 2004) (citing *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1998)).  Therefore, this affirmative defense is denied.[9]

---

[9] This affirmative defense also fails because comparative negligence or culpable conduct are tort law doctrines that cannot be asserted as affirmatives defenses in this action, which alleges breach of contract.  *See Eastern Sav. Bank, FSB*, 2022 WL 877781, at *10 (rejecting affirmative defense "that plaintiff's action is barred by the doctrine of comparative negligence and culpable conduct" as such "doctrines apply to tort cases," whereas "the plaintiff's causes of action arise out of an alleged breach of contract").

14

D.      **Sixth Affirmative Defense: Estoppel**

The Contessa Defendants' sixth affirmative defense is that "Plaintiff is estopped by its own actions from asserting any claims against Defendants." (Am. Answer, Dkt. 50, at 10.) In their motion papers, the Contessa Defendants refer to Gerard Contessa's allegations set forth in his Affidavit that Plaintiff "employed unfair and deceptive practices" by lending to CBL Motors even though "Plaintiff knew or should have known [CBL Motors] was about to fail" and by "requiring a [p]ersonal [g]uaranty" despite knowing that CBL Motors was about to fail. (Contessa Aff., Dkt. 81, ¶ 6 (cited in Contessa Opp., Dkt. 81-3, ¶ 46).) The Contessa Defendants further argue that Plaintiff is estopped from pursuing this foreclosure because "Plaintiff, its agents, representatives, and employees, or its predecessors failed to verify [the Contessa Defendants'] incomes, assets, [and] employment" and "employed improper, inadequate or nonexistent" due diligence about the Contessa Defendants' ability to repay the loan secured by the Mortgage. (Contessa Aff., Dkt. 81, ¶¶ 8–9 (cited in Contessa Opp., Dkt. 81-3, ¶ 46).)

"A mortgage lender may be estopped from asserting rights under a mortgage to prevent a fraud or injustice to the person against whom enforcement is sought, who in justifiable reliance upon the lender's words or conduct has been misled to his detriment." *CIT Bank, N.A. v. Nwanganga*, 328 F. Supp. 3d 189, 203–04 (S.D.N.Y. 2018) (quoting *First Union Nat'l Bank v. Tecklenburg*, 769 N.Y.S.2d 573, 574 (N.Y. App. Div. 2003)). To successfully assert an estoppel affirmative defense, defendant has the burden of showing "(1) conduct by plaintiff which amounts to a false representation or concealment of material facts; (2) intention that such conduct will be acted upon by the other party; and (3) knowledge of the real facts by plaintiff." *See Gustavia Home, LLC v. Cudjoe*, No. 16-CV-3992 (DLI) (CLP), 2019 WL 13171158, at *5 (E.D.N.Y. Mar. 1, 2019) (cleaned up). In addition, the Contessa Defendants must also prove their own "(1) lack

of knowledge of the true facts; (2) [their] reliance upon the conduct of the [SBA]; and (3) a prejudicial change in their position." *Id.*

Here, the Contessa Defendants have failed to point to any *facts or evidence* in the record that satisfy these requirements. Again, they simply rely on their own allegations or assertions, made in opposition to the summary judgment motion. Indeed, an estoppel defense makes no sense in this case. The Contessa Defendants' assertion that the SBA "knew or should have known" that CBL Motor "was about to fail" and that the Contessa Defendants concealed material facts about CBL Motor's financial situation cannot be squared with the requirement for an estoppel affirmative defense that the Contessa Defendants themselves "lack[ed] knowledge" of those material facts about CBL Motor's financial troubles. *See id.* Therefore, this affirmative defense is dismissed.[10]

### E.      Seventh Affirmative Defense: Waiver

For their seventh affirmative defense, the Contessa Defendants assert that "Plaintiff has waived any rights that it may have had to relief from this Court" (*see* Am. Answer, Dkt. 50 at 10), because the SBA "accept[ed] at least one payment from Defendants[] [o]n or about October 20, 200[8], after the acceleration note was supposedly sent[.]" (Contessa Opp., Dkt. 81-3, ¶ 50).[11] To successfully assert a waiver affirmative defense, a defendant must meet their "burden of proving

---

[10] The Contessa Defendants cite *Golden Eagle Capital Corp. v. Paramount Mgt. Corp.*, 88 A.D.3d 646 (N.Y. App. Div. 2011), for the proposition that "[c]ourts have allowed the affirmative defense of estoppel in foreclosure actions." (Contessa Opp., Dkt. 81-3, ¶ 47.) The question here, however, is not whether the Contessa Defendants *can* assert equitable estoppel, but rather whether they have produced sufficient evidence from which a jury could find this affirmative defense proved. As explained above, the Court concludes that the Contessa Defendants have failed to produce *any evidence*, no less sufficient evidence to assert the estoppel defense. Therefore, *Golden Eagle Capital* is inapposite.

[11] Although the Contessa Defendants claim that they made a payment "on or about October 20, 2009," based on the context and the underlying documents submitted to establish that alleged payment, the Court understands that they are actually claiming that this payment occurred on or about October 20, 2008.

that plaintiff intentionally relinquished a known right." *Cudjoe*, 2019 WL 13171158, at \*5 (citation omitted); *see also Secured Asset Mgmt., LLC v. Cong. Beth Joseph Zwi Dushinsky*, No. 17-CV-5588 (DLI) (CLP), 2019 WL 4861411, at \*8 (E.D.N.Y. Sept. 30, 2019) (denying waiver defense where "the evidence shows that [a] [p]laintiff never knowingly or intentionally waived its rights to collect the Mortgage payments due under the Note, and timely commenced foreclosure proceedings to vindicate its rights under the Mortgage"). "Waiver is an intentional relinquishment of a known right and should not be lightly presumed." *Gilbert Frank Corp. v. Fed. Ins. Co.*, 520 N.E.2d 512, 514 (N.Y. 1988) (citation omitted). Accordingly, New York courts have "stringently enforced" the "particularly elevated" burden of "pointing to specific contested facts in opposing a motion for summary judgment" that is imposed on a party asserting the affirmative defense of waiver. *See Sec. Pac. Mortg. & Real Estate Servs., Inc. v. Canadian Land Co. of Am.*, 690 F. Supp. 1214, 1219 (S.D.N.Y. 1988) (citing cases); *see also N.Y. State Urb. Dev. v. Marcus Gravey Brownstone Houses*, 469 N.Y.S.2d 789, 795 (N.Y. App. Div. 1983) ("The bare assertion that certain representatives of the mortgagee made [] a promise [to forgo or delay foreclosure] is not enough to create an issue of fact.").

To meet that high burden, the Contessa Defendants assert in their Rule 56.1 Counterstatement: "In October of 2008, [Gerard] Contessa was in negotiations with the SBA to resolve this issue. After the date of the acceleration letter, [Gerard] Contessa made at least one payment of $2,021 on or about October 20, 2008, which was accepted by the SBA." (Defs. Rule 56.1, Dkt. 81-2, ¶ 20.) To support this factual assertion, the Contessa Defendants offer Gerard Contessa's affidavit (*see* Contessa Aff., Dkt. 81, ¶ 11), and an exhibit attached to their opposition papers, which they assert "is a true and accurate copy of paperwork showing [the Contessa] Defendants made a payment to the SBA after the date of the alleged acceleration" (*see* Declaration

of Robert E. Brown for Contessa Defendants' Opposition, Dkt. 81-1, ¶ 9).  This exhibit ("Exhibit H") consists of two one-page documents.  (*See* Ex. H, Dkt. 81-1, at ECF 92–93.)  The first document in Exhibit H is an undated and unsigned letter purportedly from an SBA loan officer (hereinafter, "SBA letter") to Gerard Contessa "to confirm the terms of the workout arrangement for [Defendants'] SBA disaster loan," referencing a "conversation of October 20, 2008, [in which Defendants] agreed to make (3) three consecutive monthly payments of $2021.00[.]"  (*Id.* at ECF 92.)  The letter also explains that the "workout arrangement does not alter the terms of [the] Note and Loan Authorization Agreement and [that] all amounts outstanding on [the] SBA loan remain owing."  (*Id.*)  The second document in Exhibit H is a handwritten letter dated October 20, 2008, from Gerard Contessa to the same loan officer reading: "As per our phone conversations, here is the first of 3 installments.  Then we will fill out the papers you have sent for a full release of the loan for a 50% in full payment of the outstanding balance."  (*Id.* at ECF 93.)  Importantly, nothing in this letter indicates proof of payment, such as a confirmation number for a bank transfer or a reference to a check made out to the SBA.

The Court finds that Exhibit H and the affidavit from Gerard Contessa are woefully insufficient to show that Plaintiff "intentionally relinquished a known right."  *See Cudjoe*, 2019 WL 13171158, at *5.  First, even if the Court assumes that the parties entered into the "workout arrangement" alluded to in Exhibit H, the Contessa Defendants have failed to provide evidence that they satisfied the terms of the agreement (which required three payments of $2021), as they have provided no documentary evidence of any payment of $2021—such as proof of a wire transfer or a deposited check—let alone proof of three timely payments.[12]  More importantly,

---

[12] The Court has reason to doubt the authenticity of the SBA letter because it is neither signed nor dated.  But because Plaintiff has only made a general objection to Contessa Defendants' Rule 56.1 statement and has not contested the authenticity of Exhibit H, the Court assumes for the

Exhibit H does not indicate a waiver of any of Plaintiff's rights; in fact, the SBA letter makes clear that the purported "workout arrangement" "[did] not alter the terms of [the] Note and Loan Authorization Agreement."  (Ex. H, Dkt. 81-1, at ECF 92.)

The cases cited by the Contessa Defendants in support of the waiver defense are unavailing. For example, the Contessa Defendants argue that in *Scelza v. Ryba*, a New York State trial court dismissed a foreclosure action after "determining[] plaintiff had accepted late payment [and] thereby waived the acceleration clause" in its loan agreement with the defendants.  (*See* Contessa Opp., Dkt. 81-3, ¶ 27 (citing *Scelza*, 169 N.Y.S.2d 462 (N.Y. Sup. Ct. 1957).)  In *Scelza*, the plaintiff argued that because defendants' check for a payment in July 1957 was not received until 14 days after a grace period had expired, the "lateness in itself constituted a breach sufficient to warrant an acceleration of the balance on the principal." 169 N.Y.S.2d at 463.  The court in *Scelza* rejected this argument because for each of the immediately preceding four months, the plaintiff had accepted payments that were made after the grace period "without protest," which led the court to find that "a course of conduct was established with his acquiescence." *Id*. at 463–64.  By contrast, there is no record in this case of Plaintiff accepting several late payments, so as to establish a "course of conduct" that could constitute clear evidence of Plaintiff "knowingly or

---

purposes of this analysis that the letter is authentic.  Overall, the Court finds Plaintiff's response to paragraph 20 of Contessa Defendants' Rule 56.1 Counterstatement to be inadequate.  It is clear that a central part of Defendants' argument is that Plaintiff accepted a payment of $2021 on or about October 20, 2008, after the acceleration letter was sent by Plaintiff.  The Court finds Plaintiff's statement that it "cannot dispute that Gerard Contessa made a payment to the SBA in 2008" to be unresponsive and utterly unhelpful in determining whether the payment was made and received after the acceleration letter.  (*See* Pl. Response to Defs. Rule 56.1, Dkt. 82-1, ¶ 20.)  The Court expects Plaintiff's counsel and the SBA to be more forthcoming in future submissions to this Court.

intentionally waiv[ing] its rights" under the mortgage agreement.[13]  *See Secured Asset Mgmt., LLC*, 2019 WL 4861411, at *8.[14]

### F.    Eighth Affirmative Defense: Attorneys' Fees

Next, the Contessa Defendants argue as their eighth affirmative defense that it "has been necessary for Defendants to employ the services of an attorney to defend this action, and [therefore] a reasonable sum should be awarded to [them] for attorneys' fees, together with costs expended in this action." (Am. Answer, Dkt. 50, at 10–11.)  This plainly is not an affirmative defense, but a request for relief.  *See Nwanganga*, 328 F. Supp. 3d at 204.  Regardless, because the Court is granting Plaintiff's motion for summary judgment, the Contessa Defendants are not entitled to fees and costs.  *Id.*; *see also Hoyer*, 362 F. Supp. 3d at 92–93 ("Because the Court has concluded that Plaintiff is entitled to summary judgment, the counterclaim [for attorneys' fees and costs] is necessarily dismissed.") (citation omitted).

---

[13] As noted above, Plaintiff states in his response to Contessa Defendants' Rule 56.1 Counterstatement that it "cannot dispute that Gerard Contessa made a payment to the SBA in 2008."  (*See* Pl. Response to Defs. Rule 56.1, Dkt. 82-1, ¶ 20.)  But Plaintiff has never acknowledged receiving three monthly payments.

[14] The Contessa Defendants also cite the Third Circuit's decision in *Security Mut. Life Ins. Co v. Contemporary Real Estate Assocs.*, 979 F.2d 329 (3d Cir. 1992), for the proposition that if "a mortgagee accept[s] a lesser amount, such mortgagee waives its right to acceleration and to proceed with the foreclosure action."  (Contessa Opp., Dkt. 81-3, ¶ 28.)  Although it is true that the Third Circuit observed that if the plaintiff in that case had "accepted monthly payments after the acceleration[,] it may well have waived the default," this decision is entirely inapposite because "Pennsylvania substantive law control[ed] the disposition of the late charge issue presented" in that case, *see* 979 F.2d at 331, whereas New York law applies here.  Furthermore, as previously discussed, the Contessa Defendants offer no *evidence* of a post-acceleration payment to Plaintiff, and the purported SBA letter offered by Defendants made clear that the SBA was not waiving any of its rights under "Note and Loan Authorization Agreement."  (Ex. H, Dkt. 81-1, at ECF 92.)

### G.      Ninth Affirmative Defense: Good Faith

The Contessa Defendants' ninth affirmative defense is that "[a]t all times mentioned in the complaint, [they] were acting in good faith belief that their actions were legally justifiable."  (Am. Answer, Dkt. 50, at 11.)  Citing to Gerard Contessa's Affidavit and to their Amended Answer, the Contessa Defendants explain that they have "clearly identif[ied] the Plaintiff's actions" that constitute the basis of this affirmative defense.  (*See* Contessa Opp., Dkt. 81-3, ¶¶ 55–56 (citing Am. Answer, Dkt. 50, ¶¶ 55–61 and Contessa Aff., Dkt. 81, ¶¶ 6–9).)  The Court construes the Contessa Defendants to be arguing that they were "acting in good faith" with respect to repaying the SBA loan, as evidenced by (1) Gerard Contessa's efforts to negotiate a settlement to his default; (2) his inability to recall "ever receiving the SBA's purported acceleration letter . . . and 90 day notice"; and (3) Gerard Contessa making at least one payment on October 20, 2008, after the acceleration letter.  (*See* Defs. Rule 56.1, Dkt. 81-2, ¶¶ 18–20.)

Defendants cite no authority, and the Court is unaware of any case, establishing a "good faith" affirmative defense to a foreclosure action.  The Court therefore finds it irrelevant whether Defendants acted in good faith in trying to settle the loan.  Any purported "good faith" efforts to resolve the dispute do not undermine Plaintiff's *prima facie* showing that summary judgment in this foreclosure action is warranted, and the Contessa Defendants have not directed the Court's attention to any legal authority to the contrary.  In addition, it is unclear to the Court how Defendants claim that Gerard Contessa "has no recollection of ever receiving" the acceleration letter or the 90-day notice—suggesting that he would not have defaulted if he had received those notices—is relevant or appropriate as a "good faith" defense to the mortgage default.[15]

---

[15]  The Contessa Defendants appear to be conflating this good faith defense with an argument that *Plaintiff breached* an implied covenant of good faith and fair dealing, as they assert that Plaintiff "employed unfair and deceptive practices, including" the fact that Plaintiff "len[t] to

**H.     Tenth Affirmative Defense: Conduct of Other Named Defendants and/or Third Parties**

The Contessa Defendants' tenth affirmative defense is that "[a]ny injuries that Plaintiff may have sustained . . . were not caused by any act or failure to act on the part of the Defendants, but rather, through the acts, omissions, negligence and/or intentional misconduct of other named defendants and/or third parties over which Defendants have no control." (Am. Answer, Dkt. 50, at 11.)

Not surprisingly, Plaintiff notes that it knows neither the identities of the third parties referenced in this defense, nor the "acts, omission and negligence [of which] Defendants are referring to" because the Contessa Defendants have not provided any detail as to this defense. (*See* Pl. Mem., Dkt. 80, ¶¶ 88–89.) Indeed, the defense has failed to identify any such "other named defendants and/or third parties" or put forth any proof that "other named defendants and/or third parties over which" they have no control caused Plaintiff's alleged injuries. *See U.S. Bank Nat'l Ass'n*, 2022 WL 2392522, at *5 (holding that defendants bear the burden of proof for their affirmative defenses).

---

a business that [it] knew or should have known was about to fail" and that Plaintiff "requir[ed] a Personal Guaranty on a Note" for that "business that Plaintiff allegedly knew or should have known was about to fail." (*See* Am. Answer, Dkt. 50, ¶ 55; Contessa Aff., Dkt. 81, ¶ 6.) To the extent the Contessa Defendants are proceeding on this theory of the SBA's lack of good faith and fair dealing, they must point to some "facts which tend to show that Plaintiff sought to prevent performance of the contract or to withhold its benefits from [the Contessa] Defendant." *See Nwanganga*, 328 F. Supp. 3d at 200 (brackets and citations omitted). But here, the Contessa Defendants have neither alleged, nor pointed to any evidence in the record, demonstrating that the SBA "knew or should have known" that CBL Motor was about to fail. *See id.* (denying affirmative defense that plaintiff violated the implied duty of good faith and fair dealing because "[d]efendant [has] not allege[d], let alone provide[d] evidence, that" plaintiff sought to prevent performance of the contract or withhold its benefits from defendants); *see also Hoyer*, 362 F. Supp. 3d at 86 (rejecting a defense that plaintiff "intentionally exercised improper, inadequate or nonexistent due diligence regarding defendants' ability to repay the amounts due" for lack of evidence in support of that claim).

In response to Plaintiff's argument that none of the third parties or other named defendants were identified, the Contessa Defendants confusingly state that they have identified "'Plaintiff, its agents, representatives, and employees, or its predecessors' as the parties alleged to have engaged in fraud and negligence." (*See* Contessa Opp., Dkt. 81-3, ¶ 57 (citing Contessa Aff., Dkt. 81, ¶¶ 6–9); *see also* Defs. Rule 56.1, Dkt. 81-2, ¶¶ 11–17.) That admission alone dooms this affirmative defense. If the "the other named defendants" or "third parties" that the Contessa Defendants refer to are Plaintiff's "agents, representatives, employees, or predecessors," this affirmative defense is no different from the fifth affirmative defense, and accordingly is denied on the same grounds.

## I.      Twelfth Affirmative Defense: Failure to Comply with RPAPL 1301 and 1304 Notice Requirements

The Contessa Defendants assert as their twelfth affirmative defense Plaintiff's alleged failure to comply with RPAPL 1301 and 1304 requirements. (Am. Answer, Dkt. 50, at 11.) Because the Court has already determined that Plaintiff's copies of certified mailing are sufficient proof of its compliance with RPAPL Section 1304 and Contessa Defendants do not point any additional evidence in the record to rebut the presumption of regularity, this affirmative defense fails.

## J.      Thirteenth Affirmative Defense: Wrongful Foreclosure

In their Amended Answer, the Contessa Defendants assert as their thirteenth affirmative defense that "Plaintiff is proceeding to conduct a wrongful foreclosure against Defendants." (Am. Answer, Dkt. 50, at 11.) But the Contessa Defendants did not address this affirmative defense in their opposition papers, and the Court deems them to have abandoned it. *See Dunkin' Donuts Franchised Rest. LLC v. Tim & Tab Donuts, Inc.*, No. 07-CV-3662 (KAM) (MDG), 2009 WL 2997382, at *2 (E.D.N.Y. Sept. 15, 2009) (deeming affirmative defense and counterclaims abandoned "[a]s a result of defendants' failure to oppose plaintiffs' motion as to their defenses and

counterclaims").  The Court will address the merits of the Contessa Defendants' argument that Plaintiff has engaged in a wrongful foreclosure below because they have raised "Wrongful Foreclosure" as a separate counterclaim.

### K.    Fourteenth Affirmative Defense: Marital Property

As their fourteenth affirmative defense, the Contessa Defendants claim that since the Property "is deemed to be marital property under New York's Domestic Relations Law" and "Andrea Contessa did not execute the Note," she is entitled to "her equity in the [Property] as a non-borrower Spouse."  (*See* Am. Answer, Dkt. 50, at 11; *see also* Contessa Opp., Dkt. 81-3, ¶ 65.)  The Contessa Defendants cite no legal authority to support this "marital property" theory affirmative defense, and the Court is not aware of any case law in support of that position.  While it is true that Andrea Contessa's name and signature are not on the Note, her signature is clearly on the Mortgage.  (*See* Compl., Ex. B, at 4).  Moreover, the Contessa Defendants admit that Andrea Contessa signed an unconditional guaranty agreement for the Note.  (*See* Defs. Resp. to Pl. First Set of Requests for Admission, Ex. I, Dkt. 80-11, ¶ 3; *see also* Andrea Contessa Guaranty, Ex. D, Dkt. 80-6, at 5.)  Therefore, the Court rejects this affirmative defense because the Contessa Defendants have not shown "by admissible evidence a genuine and substantial issue rebutting" their own admission.  *Camofi Master LDC v. Coll. P'ship, Inc.*, 452 F. Supp. 2d 462, 471 (S.D.N.Y. 2006) (quotation omitted).

### L.    Fifteenth Affirmative Defense: Unclean Hands

The Contessa Defendants' final affirmative defense is that Plaintiff "has unclean hands in this matter because [it] wrongfully lent funds to a business that was failing, and had little chance of surviving" and, accordingly, Plaintiff's alleged failure "to determine the creditworthiness of CBL [Motor] is the cause of the alleged default in the subject Note and Mortgage."  (Am. Answer,

Dkt. 50, at 11.)  New York law requires a party asserting the doctrine of unclean hands "to prove that (1) the offending party is guilty of immoral, unconscionable conduct; (2) the conduct was relied upon by the asserting party; and (3) the asserting party was injured as a result."  *Sheehy v. New Century Mortg. Corp.*, 690 F. Supp. 2d 51, 68 (E.D.N.Y. 2010) (citing *Kopsidas v. Krokos*, 742 N.Y.S.2d 342, 344 (N.Y. App. Div. 2002)).  Courts are "reluctant to apply the [unclean hands] doctrine in all but the most egregious situations."  *Avail Holding, LLC. v. Nanda*, No. 15-CV-486 (ADS) (SIL), 2017 WL 9485717, at *6 (E.D.N.Y. Jan. 11. 2017) (ellipses omitted), *report and recommendation adopted*, 2017 WL 543206 (E.D.N.Y. Feb. 10, 2017).

The Court rejects this affirmative defense, which is, in reality, another re-packaging of the Contessa Defendants' fifth, sixth, tenth, and thirteenth affirmative defenses.  First, as the party invoking unclean hands, the Contessa Defendants bears the burden of proof.  *See Sheehy*, 690 F. Supp. 2d at 68; *see also U.S. Bank Nat'l Ass'n*, 2022 WL 2392522, at *5 ("The burden shifts to Defendants to establish any affirmative defenses.") (cleaned up).  Therefore, the Contessa Defendants' assertion that "Plaintiff has provided no sworn testimony or admissible evidence to rebut" the unclean hands doctrine is irrelevant.  (Contessa Opp., Dkt. 81-3, ¶ 72.)  In fact, it is the Contessa Defendants who have failed to satisfy their burden, as they only cite to their Amended Answer in support of this affirmative defense.  However, this Court cannot rely on the allegations in the Amended Answer to resolve this Rule 56 motion.  *See Fitzgerald*, 251 F.3d at 360–61 ("In general, a party opposing a properly supported motion for summary judgment is not entitled to rely solely on the allegations of [their] pleading[.]").  Finally, as there has been no showing of

"immoral, unconscionable conduct" by Plaintiff, *see Sheehy*, 690 F. Supp. 2d at 68, the unclean hands doctrine has no application here.[16]

## III.     Defendants' Counterclaims

Although the Contessa Defendants' Answer raises four counterclaims (*see* Am. Answer, Dkt. 50, ¶¶ 70–101), they have since voluntarily withdrawn the third and fourth counterclaims (*see* Contessa Opp., Dkt. 81-3, ¶ 33).  Therefore, the Court only addresses the first two counterclaims.

### A.     First Counterclaim: Wrongful Foreclosure

The Contessa Defendants bring a counterclaim for wrongful foreclosure, premised entirely on the notion that this suit was barred by the statute of limitations.  (*See* Am. Answer, Dkt. 50, ¶¶ 70–79.)  However, the Contessa Defendants in their opposition papers abandon their statute of limitations argument and simply assert that they have "clearly plead other facts to support a wrongful foreclosure [counterclaim] separate and apart from the statute of limitations issue"—to wit, reiterating the allegations that Plaintiff "employed unfair and deceptive practices" to execute the Note and Mortgage (*see* Contessa Opp., Dkt. 81-3, ¶¶ 74, 76.)  For the reasons already addressed in the Court's analysis of the Contessa Defendants' sixth and ninth affirmative defenses

---

[16] The Contessa Defendants again cite *Golden Eagle*, this time to assert that the New York state trial court in that case committed "reversible error" by dismissing the unclean hands affirmative defense in a foreclosure action.  (*See* Contessa Opp., Dkt. 81-3, ¶ 72.)  In that case, the Appellate Division found in conclusory fashion that because the defendants' "answer sufficiently alleged that the plaintiff [had] engaged in concealment of material facts," the lower court erred in dismissing the unclean hands defense.  *See* 88 A.D.3d at 648.  However, the Contessa Defendants provide no analysis of why the facts or holding of that case should apply here.  As the Court has explained, the Contessa Defendants have made only conclusory allegations without any showing that Plaintiff engaged in any wrongful conduct that the Contessa Defendants relied upon and that led to their injury.

relating to alleged unfair and deceptive practices, the Court concludes that these conclusory allegations alone are insufficient to sustain this counterclaim.[17]

###    B.    Second Counterclaim: Accounting

The Contessa Defendants allege that "Plaintiff and its agents charged [the Contessa] Defendants excessive, inappropriate, inflated and/or unwarranted fees." (*See* Am. Answer, Dkt. 50, ¶ 81.)  Based solely on this allegation and without any citation to case law or any statutory provision, the Contessa Defendants bring a counterclaim "demand[ing] that Plaintiff and their respective agents account to [the Contessa] Defendants for all fees and expenses charged to [the Contessa] Defendants and disgorge all such fees." (*Id.* ¶ 82.)

The Court dismisses this counterclaim as improperly pled.  The Contessa Defendants' Answer does not contain any facts that can plausibly support the allegation that the SBA charged "excessive, inappropriate, inflated and/or unwarranted fees," let alone identify which "fees" this counterclaim is targeting.  (*See* Am. Answer, Dkt. 50, ¶ 81); *see also Nwanganga*, 328 F. Supp. 3d at 202 (denying counterclaims where defendants' answer "is devoid of any facts plausibly suggesting" the element of the counterclaims).  On the other hand, if this counterclaim is intended to challenge the remaining balance of the loan, that too would be unsuccessful because as Plaintiff

---

[17] Moreover, the Court doubts whether the Contessa Defendants can even bring a cause of action for "wrongful foreclosure" at this juncture.  Several courts in this District and in the Southern District have observed that a "wrongful foreclosure" claim cannot be brought before "entry of judgment of foreclosure of the subject property or a sale." *Calizaire v. Mortgage Elec. Registration Sys., Inc.*, No. 14-CV-1542 (CBA) (SMG), 2017 WL 895741, at *9 (E.D.N.Y. Mar. 6, 2017); *see also Pawaroo v. Countrywide Bank*, No. 09-CV-2924 (ARR) (SMG), 2010 WL 1048822, at *7 (E.D.N.Y. Mar. 18, 2010) ("Without some factual basis supporting an allegation of foreclosure, a cause of action for wrongful foreclosure cannot survive.") (citation omitted); *Guido v. Wells Fargo Bank, N.A.*, No. 16-CV-1568 (VSB), 2017 WL 5515859, at *4 (S.D.N.Y. Mar. 21, 2017) ("[A]s the term 'wrongful foreclosure' suggests, an allegation that there was a foreclosure would appear to be the *sine qua non* for a claim of wrongful foreclosure.") (citation omitted).

notes, the Contessa Defendants have already admitted "that the principal balance due under the Note is $402,508.10." (*See* Pl. 56.1, Dkt. 78, ¶ 5; *see also* Defs. Resp. to Pl. First Set of Requests for Admission, Ex. I, Dkt. 80-11, ¶ 6.) In either event, this counterclaim is denied.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is granted. Plaintiff's motions to strike the Contessa Defendants' answer and affirmative defenses and to amend the complaint are denied as moot. Plaintiff is directed to submit a proposed judgment of foreclosure providing for a sale of the Property consistent with this Memorandum & Order within 30 days. The proposed judgment of foreclosure should provide for the appointment of a proposed referee to effectuate the sale and to disperse funds from such a sale. Finally, the Court *sua sponte* dismisses without prejudice all claims against the "John Doe" and "Jane Doe" nominal defendants.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated:  March 29, 2023
           Brooklyn, New York